UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY S. MANNING,

                                        Plaintiff,

            -vs-                                           07-CV-0327C

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                        Defendant.

---

        Plaintiff Timothy S. Manning initiated this action pursuant to section 405(g) of the

Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the

Commissioner of Social Security (the "Commissioner") denying plaintiff's application for

Social Security disability insurance ("SSDI") and Supplemental Security income ("SSI")

benefits.  The Commissioner has filed a motion for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure (Item 6), and plaintiff has filed a cross-

motion for judgment on the pleadings (Item 8).   For the following reasons, the

Commissioner's motion is granted, and plaintiff's cross-motion is denied.


## BACKGROUND

        Plaintiff was born on October 8, 1962 (Tr. 293).[1]  He has a high school education,

and has past work experience as a security guard, junkyard employee, and farm worker

(Tr. 16).  He applied for SSI benefits on July 31, 2003, and SSDI on August 4, 2003,

alleging disability as of March 22, 2003 due to a nervous breakdown, vision problems,

---

[1]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint.

back/neck problems, depression, anxiety, panic attacks, paranoia, and seizure-like activity (Tr. 45-47, 58, 274-76).  These applications were denied initially on November 20, 2003 (Tr. 35).  Plaintiff requested a hearing, which was held on May 19, 2005 before Administrative Law Judge ("ALJ") James Kemper, Jr. (Tr. 291-333).  Plaintiff testified and was represented at the hearing by a non-attorney representative (Tr. 15).  Jay Steinbrenner, a vocational expert, also testified at the hearing (Tr. 292, 328-332).

By decision dated January 17, 2007 the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 15-27).  Following the sequential process for evaluating disability claims outlined in the Social Security Administration Regulations (*see* 20 C.F.R. Parts 404 (SSDI) and 416 (SSI)), the ALJ reviewed the medical evidence and determined that plaintiff's impairments, while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 25).  The ALJ considered plaintiff's allegations and testimony regarding his functional limitations, but found plaintiff to be "not totally credible" in this regard (Tr. 25).  The ALJ then found that while plaintiff was unable to perform any of his past relevant work, he had the residual functional capacity ("RFC") for a range of light work which, when considered along with plaintiff's age, educational background, and the testimony of the vocational expert, led to the conclusion that there are a significant number of jobs in the national economy that plaintiff could perform (Tr. 26).

The ALJ's decision became the Commissioner's final determination on March 27, 2007, when the Appeals Council denied plaintiff's request for review (Tr. 4-7).  Plaintiff then brought this action for judicial review pursuant to section 405(g), seeking reversal of the Commissioner's determination or remand for further consideration of his claim for SSDI

and SSI benefits.  In his motion for judgment on the pleadings, plaintiff contends that the ALJ made the following errors:

1.      Failure to properly assess the combined effect of plaintiff's physical and mental impairments in determining his RFC;

2.      Failure to recontact plaintiff's treating physician for additional information regarding his opinion that plaintiff was "emotionally disabled."

Each of these grounds is discussed in turn below.

## DISCUSSION

### I.      Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.   Standard for Determining Eligibility for SSDI/SSI Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide at step two if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment is severe, the ALJ then determines at step three whether the impairment  meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets this burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids").[2]  However, where the Grids fail to describe the full extent of a claimant's physical and/or mental imitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy

---

[2]The Grids (which apply to both SSDI and SSI claims) were designed to codify guidelines for considering RFC in conjunction with age, education and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ followed the five-step sequential evaluation procedure, finding at the first step that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability in March 2003 (Tr. 16). The ALJ then reviewed the medical evidence and found that plaintiff's musculoskeletal and visual impairments qualified as "severe" under the Regulations, but his alleged mental impairments did not. According to the ALJ, while the record revealed a degree of psychiatric distress, it did not establish that plaintiff experienced more than a mild degree of functional limitation with regard to the relevant "Paragraph B" criteria[3] of Sections 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) of the Listings (Tr. 17-19).

At step three, the ALJ found that plaintiff's physical impairments, though severe, did not satisfy the requirements of any relevant Listing, even "considering the interactive and cumulative effects of all medically determinable impairments . . . ." (Tr. 20). Proceeding to step four, the ALJ found that plaintiff had the RFC to perform a significant range of light work, subject to certain limited physical restrictions pertaining to his ability to reach, his left hand fine-finger dexterity, his left eye visual acuity, and his seizure activity (Tr. 20-24).

---

[3]This criteria for rating the functional limitation of an alleged mental impairment, referred to as "Paragraph B" criteria, requires the ALJ to rate the degree of the claimant's functional limitation in four specific areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B), 12.06(B); *see also* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Simply stated, in order to satisfy the Paragraph B criteria, the claimant must demonstrate at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See, e.g., Paratore v. Comm'r of Social Sec. Admin.*, 2008 WL 541156, at *5 (N.D.N.Y. February 25, 2008).

Using the Grids as a framework,[4] and considering the vocational expert's testimony, the ALJ found at step five that there are a significant number of jobs in the economy that plaintiff could perform, given his age, education, work experience, and RFC (Tr. 24-25).

Plaintiff contends that, in making this determination, the ALJ failed to properly assess plaintiff's RFC in light of the medical evidence in the record showing the functional limitations imposed by the combined effect of plaintiff's physical and mental impairments. Plaintiff also contends that the ALJ failed to discharge his duty to develop the administrative record by recontacting Dr. Jeffery Gelber, plaintiff's primary treating physician, for additional information with respect to his opinion that plaintiff was "emotionally disabled since March 23, 2003"  (Tr. 22, 169).

## III.   The ALJ's Assessment of Residual Functional Capacity

In support of his argument that the ALJ erred as a matter of law when he found that plaintiff had the RFC to perform a significant range of light work without considering the restrictions imposed by plaintiff's mental impairments, plaintiff cites Social Security Ruling 96-8p, which provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments,

---

[4]As explained in the Regulations, the Grids only account for exertional limitations, *i.e.*, those that relate to the ability of a claimant to "meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling) . . . ."  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  Where a claimant has nonexertional limitations (*e.g.*, anxiety, nervousness, depression) as well as strength limitations, the Grids may be used as "a framework to guide [the ALJ's] decision."  20 C.F.R. §§ 404.1569a(d), 416.969a(d); *cf. Blanda v. Astrue*, 2008 WL 2371419, at *15 (E.D.N.Y. June 9, 2008) .

the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

According to plaintiff, the record contains ample medical evidence showing that his mental impairments limited his ability to sustain basic work activity, but the hearing determination includes no indication that the ALJ considered these limitations, either alone or in combination with the limitations imposed by his physical impairments, when assessing RFC.

The court's review of the ALJ's decision indicates otherwise. First of all, in his assessment of the severity of plaintiff's mental impairments at step two of the sequential evaluation process, the ALJ thoroughly discussed the medical evidence as it related to the relevant criteria for Listings 12.04 and 12.06 (see Tr. 17-19). The ALJ found that, while the record reflected some degree of psychiatric distress, the medical evidence did not establish "more than minimal work-related limitation of function" (Tr. 19). The ALJ found no evidence of a formal mental health history beyond effective management by psychiatric medication prescribed by Dr. Gelber, and a single incident of inpatient treatment at Olean General Hospital in October 2004 (see Tr. 253-57), which the ALJ found to be "directly related to . . . noncompliance with prescribed medication as opposed to unmanageable symptoms." (Tr. 19).

The ALJ referred to the report of Dr. Richard Cohen, a non-examining psychiatrist who conducted a post-hearing review of plaintiff's file (Tr. 263-72). Dr. Cohen found no evidence of marked or moderate functional limitations in the "Paragraph B" criteria areas (activities of daily living, social functioning, concentration/ persistence/pace, and episodes

of decompensation), which indicated that plaintiff could perform "at least simple repetitive tasks and probably more in functioning in a work environment" (Tr. 271). This finding is supported by the report of a mental RFC assessment conducted in November 2003 by agency medical consultant George Bennett, who found no more than a "mild" degree of functional limitation in any of the Paragraph B areas (Tr. 197).

The ALJ also discussed the report of consulting psychologist Dr. Robert Hill, who examined plaintiff on September 22, 2003 (Tr. 144-48). Plaintiff reported having "panic-like attacks" and "vague symptoms of depression" (Tr. 147), which Dr. Hill indicated could be "reflective of current physical problems including possible caffeine intoxication or other medical condition" other than mental impairment (*id.*). Dr. Hill noted that plaintiff may have some trouble managing stress and consistently performing tasks should he have recurrent anxiety attacks, but he was able to follow and understand simple directions and instructions, perform simple, rote tasks, maintain attention and concentration, and relate adequately with others (*id.*). Dr. Hill recommended further medical evaluation and psychiatric assessment, along with "vocational training and rehabilitation pending his ability to return to [his] prior occupation." ( Tr. 148).

In making his RFC assessment, the ALJ clearly indicated that he considered the evidence pertaining to the limitations imposed by plaintiff's mental impairments in combination with the evidence in the record regarding the functional limitations associated with plaintiff's musculoskeletal, seizure, and visual impairments (*see* Tr. 22-23), as required by SSR 96-8p. Accordingly, the court finds that the RFC determination in this case was not the result of legal error on the part of the ALJ, and plaintiff is not entitled to reversal or remand on this ground.

## IV.    Dr. Gelber's Opinion

As indicated above, the record contains a letter from Dr. Jeffrey Gelber, plaintiff's

primary physician, dated August 14, 2003, which states:

> To whom it may concern;
>
>      Tim Manning is a patient of mine.  Tim has been emotionally disabled
> since 3/23/03.   If further information is needed, please don't hesitate to
> contact me.

(Tr. 169).  ALJ Kemper gave little weight to this opinion, noting in his decision that "the

ultimate conclusion of disability is one reserved to the Commissioner . . ." (Tr. 22) (citing

SSR 96-5p),[5]  and that "Dr. Gelber's medical specialty is internal medicine and not

psychiatry.  Therefore, he is out of his area of expertise in reaching this conclusion."  (Id.)

Plaintiff contends that the ALJ committed legal error when he rejected this opinion

without recontacting Dr. Gelber for clarification.  In this regard, the Regulations provide:

---

[5]SSR 96-5p states as its purpose: "To clarify Social Security Administration (SSA) policy on how we consider medical source opinions on issues reserved to the Commissioner, including . . .whether an individual is "disabled" under the Social Security Act."   SSR 96-5p, 1996 WL 374183, at *1 (S.S.A. July 2, 1996).  As explained further in the Ruling:

> The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner.
>
> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.  For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.
>
> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.  Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

Id. at *2.

When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e), 416.912(e).

Cases in the Second Circuit have explained this requirement as "an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly" where there are inconsistencies in the treating physician's reports or clear gaps in the record.  *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (quoted in *Rosa*, 168 F.3d at 79). The flip-side of this proposition is that, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa*, 168 F.3d at 79 n. 5 (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

In this case, as reflected in the discussion above, the ALJ possessed a complete medical history of the limitations imposed by plaintiff's mental impairments, and plaintiff has not indicated the existence of any obvious information gaps or inconsistencies in the administrative record that would likely have been addressed by recontacting Dr. Gelber. Indeed, subsequent to the hearing, plaintiff's attorney was allowed the opportunity to submit additional treatment notes from Dr. Gelber covering the period between February

2004 and November 2005 (Tr. 280-90).  These records were received and considered by the Appeals Council, which found no basis for changing the ALJ's decision. (Tr. 4-10).

The court's review of this material confirms the Appeals Council's determination. For example, on February 2, 2004, Dr. Gelber reported that plaintiff "has had less syncopal episodes [seizures] with medication" and "has been non compliant at times with medication and syncopal activity increases" (Tr. 283).  On July 12, 2005, plaintiff "felt better mentally with higher dosage of medication" (Tr. 281).  On November 23, 2005, Dr. Gelber reported that plaintiff "has not been compliant with medications which has precipitated seizure activity" (Tr. 280).  This information is entirely consistent with the ALJ's finding that "Dr. Gelber's treatment notes during the relevant period indicate that [plaintiff's] symptoms have been effectively managed with . . . medication as improvement is noted with proper medication adjustments" (Tr. 19).

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to recontact Dr. Gelber.

## CONCLUSION

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's determination is supported by substantial evidence, and that plaintiff is not entitled to reversal or remand of the Commissioner's determination on any of the grounds asserted.  Accordingly, the Commissioner's motion for judgment on the pleadings (Item 6) is granted, and Plaintiff's cross-motion for judgment on the pleadings (Item 8) is denied.

The Clerk of the Court is directed to enter judgment for the Commissioner.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:      3/4               , 2009
p:\pending\2007\07-327.jan23.09